## COMMERCIAL BANK & TRUST CO. et al. v. DOOLY et al.

Circuit Court of Appeals, Fifth Circuit. May 5, 1928.

No. 5265.

Bankruptcy ⬦154—Bank held not entitled to apply on bankrupt's debt amount collected by it as trustee on mortgage belonging to others than bankrupt.

Where bank, acting as trustee for several banks participating in mortgage loan, had notice before mortgage notes .were paid, that bankrupt trust company, participating in transaction, had no beneficial interest in mortgage notes held by bankrupt, and that certain other banks were beneficial owners thereof, bank was not entitled to apply on bankrupt's debt to it amount received by it as trustee in payment of part of mortgage loan in bankrupt's name, in absence of any extension of credit or other change of position due to its dealings with bankrupt with reference to loan.

Appeal from the District Court of the United States for the Southern District of Florida; William I. Grubb, Judge.

Suit by Oscar E. Dooly, trustee of the Bankers' Trust Company, bankrupt, and others, against the Commercial Bank & Trust Company and another. Decree for plaintiffs, and defendants appeal. Affirmed.

E. B. Kurtz and F. M. Hudson, both of Miami, Fla., for appellants.

S. B. Jennings, of Jacksonville, Fla., and Orville A. Park, of Macon, Ga. (Carl N. Davie, of Gainesville, Ga., on the brief), for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. In the fall· of 1925 the Bankers' Trust Company of Atlanta, Ga., and two Florida banks, the Commercial Bank & Trust Company of Miami (here-

in called the Commercial Bank), and the Palm Beach Bank & Trust Company, arranged to lend to one Kelsey $250,000, to be secured by first mortgages on real estate, $100,000 of the amount to be loaned to be furnished by the two Florida banks, $50,000 by each of them, and $150,000 of that amount to be furnished by the Bankers' Trust Company, the borrower to give his notes, payable to bearer, covering the amount borrowed. A feature of that arrangement was that the Commercial Bank was to act as trustee for the participants in the loan, the mortgages to be put up as security to be assigned to it as such trustee, and that bank as such trustee to issue its collateral trust certificates to the participants in the loan. The loan was consummated on the terms above indicated, the Commercial Bank, as trustee, receiving and retaining the notes given by Kelsey and the mortgages securing those notes. The Bankers' Trust Company distributed the $150,000 of the loan which it had agreed to finance among 23 banks in Georgia and Florida belonging to a chain of banks for which it acted as financial agent; its principal service as agent for such banks being in placing loans for them. The Bankers' Trust Company in November, 1925, issued to each of such banks participating certificates, showing that the bank in whose favor a certificate was issued was entitled to participate, to the extent of the stated sum it furnished, in a described Kelsey note and the security given therefor.

The loan to Kelsey, when originally made, was for a period of 60 days. When it fell due, $75,000 of the amount placed by the Bankers' Trust Company with other banks was paid. The remaining $75,000 was renewed for a period of 90 days from February 4, 1926, and the Bankers' Trust Company issued new participating certificates to the several banks participating in the renewal loan. When the renewal loan matured, the Bankers' Trust Company sent to the Bankers' Financing Company, at Jacksonville, Fla., for collection, the collateral trust certificate issued by the Commercial Bank to the Bankers' Trust Company, with a letter showing that the Bankers' Trust Company's participating certificates were out against the total amount of the renewal loan, and stating the names of the several banks holding those certificates and the amount of each participating certificate—four of those certificates being in favor of four Georgia banks for amounts aggregating $11,000. A copy of that letter was sent to the president of the Commercial Bank at the time the original was mailed. After the Commercial Bank had collected from Kelsey the amount due on the renewal loan, the Bankers' Financing Company sent to it the collateral trust certificate issued to the Bankers' Trust Company, with a letter containing a request that a check for the principal and interest be remitted, and a statement that the outstanding participating certificates would be taken up immediately. The Commercial Bank did not remit as requested, but applied the amount called for by the collateral trust certificates issued to the Bankers' Trust Company on notes it held against the Bankers' Trust Company and the Bankers' Financing Company, though the Commercial Bank was advised that none of the money collected from Kelsey belonged to the Bankers' Trust Company or to the Bankers' Financing Company.

After the Kelsey notes were paid as above stated, the City National Bank & Trust Company took over the assets of the Commercial Bank & Trust Company and assumed its liabilities. Thereafter the City National Bank & Trust Company paid to the Bankers' Financing Company the amounts due on the participating certificates issued by the Bankers' Trust Company to several Florida banks, but it did not pay the amount called for by such participating certificates issued to the four Georgia banks, and applied that amount on a note of the Bankers' Trust Company acquired by the Commercial Bank before the Kelsey loan was made. Evidence adduced persuasively indicated that before the Kelsey loan was consummated the Commercial Bank had notice that the $150,000 furnished through the Bankers' Trust Company was owned, not by the Bankers' Trust Company, but by other banks for which it was acting, and clearly showed that before the Kelsey renewal loan was paid the Commercial Bank was informed that the amount called for by the collateral trust certificates issued to the Bankers' Trust Company was owned by other banks holding participating certificates. It was stipulated by the parties that the Commercial Bank did not change its position in any way on account of the collection of the Kelsey loan, or the attempted set-off of part of the amount collected against the note of the Bankers' Trust Company. After the Bankers' Trust Company was adjudged bankrupt, its trustee in bankruptcy and the four Georgia banks above referred to brought this suit, in which the claim was asserted that the amounts called for by the participating certificates issued to the four Georgia banks were chargeable against the sum collected from Kelsey as above stated. The decree appealed from sustained that claim.

The Commercial Bank received and held the Kelsey notes and the security given therefor in part for itself and in part as trustee for the other owners of those notes. Before those notes were paid the Commercial Bank had explicit notice that the Bankers' Trust Company had no beneficial interest in those notes and of the interests therein of the above-mentioned four Georgia banks. In effect the claim asserted by the appellant, the Commercial Bank's successor, is that it was entitled to apply on a note it held against the Bankers' Trust Company money received by its predecessor as trustee, which belonged, not to the Bankers' Trust Company, but to the four Georgia banks, though neither the Commercial Bank nor its successor extended credit to the Bankers' Trust Company, or otherwise changed its position by reason of dealings with the Bankers' Trust Company in regard to the Kelsey loan; the evidence negativing the conclusion that the Commercial Bank acquired the note it held against the Bankers' Trust Company, or postponed the collection of that note, because of a belief that the Bankers' Trust Company was a part owner of the Kelsey notes.

The decisions in the case of Bank of Metropolis v. New England Bank, 1 How. 234, 11 L. Ed. 115; Id., 6 How. 212, 12 L. Ed. 409, were invoked in support of the appellant's contention. The opinion rendered when that case was in the Supreme Court the second time plainly shows that the court's decision, instead of supporting appellant's contention, is directly opposed to it. That decision and a decision of this court following it support the conclusion that the Commercial Bank, because of the absence of any extension of credit by it, or other change of position due to its dealings with the Bankers' Trust Company with reference to the Kelsey loan, was not entitled to apply on a debt owing to it by the Bankers' Trust Company money paid to it as trustee on Kelsey notes not owned in whole or in part by the Bankers' Trust Company. Fulton National Bank v. Hosier (C. C. A.) 295 F. 611. Under that decision, and later ones rendered by the Supreme Court, the fact that when the Commercial Bank received for payment the collateral trust certificate issued to the Bankers' Trust Company the former had notice that the latter had no interest in the part of the Kelsey loan represented by that certificate, except as a transmitting agent, and that specified shares in that part of the Kelsey loan were owned by the four named Georgia banks, kept the Commercial Bank from having the right to apply on a debt owing to it by the Bankers' Trust Company what was

paid to the Commercial Bank as trustee in satisfaction of the shares of the Kelsey loan owned by the Georgia banks mentioned. Central National Bank v. Connecticut Mut. Life Insurance Co., 104 U. S. 54, 26 L. Ed. 693; Union Stockyards National Bank v. Gillespie, 137 U. S. 411, 11 S. Ct. 118, 34 L. Ed. 724. A meaning of such decisions is that one who as trustee collects money for a known cestui que trust is not permitted to apply that money on a debt owing by a third party to the trustee individually, and not as trustee for another.

We are of opinion that reason and authority support the conclusion that appellant had no right to apply on a debt owing by the Bankers' Trust Company money to which that company was not entitled, and which was paid to the Commercial Bank, as trustee, in satisfaction of the part of the sum owing by Kelsey to which the four Georgia banks were entitled as owners, and that the decree appealed from properly adjudged that the appellant was liable for the amounts of the shares of the four Georgia banks in the sum paid by Kelsey in satisfaction of his notes, with interest on those amounts.

The decree is affirmed.